COURT OF APPEALS
DECISION
DATED AND FILED

April 6, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2022AP654-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CM172

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ANTWAN EUGENE GILL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Monroe County:  TODD L. ZIEGLER, Judge.  *Affirmed*.

¶1      GRAHAM, J.[1]  Antwan Gill appeals a judgment of conviction for possession of tetrahydrocannibinol (THC) and for operating a motor vehicle with a

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-2022 version.

detectable amount of THC in his blood, as well as a circuit court order denying his motion for postconviction relief. Gill asserts that his trial counsel was ineffective for failing to file a pretrial motion to suppress evidence obtained during a traffic stop, and for failing to more effectively cross-examine the state trooper who conducted the stop at trial. I conclude that trial counsel was not ineffective, and therefore, I affirm.

## BACKGROUND

¶2 Following a traffic stop, Gill was arrested for operating a motor vehicle while intoxicated (OWI)[2] and for possession of THC. Gill pled not guilty to these charges, and his case proceeded to a jury trial. After he was convicted, Gill filed a postconviction motion, the circuit court held a *Machner* hearing,[3] and the court denied his motion. The following summary of facts is derived from the trial evidence and the evidence introduced during the *Machner* hearing, which includes the testimony, the police report, and squad-camera footage of the traffic stop.

¶3 Shortly before 4:00 a.m. on a Friday morning, the officer in question stopped the vehicle Gill was driving after he observed it moving at a rate of 84 miles per hour in a 70 mile per hour zone. The officer approached the passenger side door of the vehicle. He later wrote in his report that, as Gill's passenger

---

[2] The Wisconsin Jury Instructions use "OWI" as an umbrella term, which encompasses three different offenses: operating a motor vehicle while under the influence of an intoxicant or a controlled substance to a degree that renders the driver incapable of safely driving contrary to WIS. STAT. § 346.63(1)(a); operating a motor vehicle with a prohibited alcohol concentration contrary to § 346.63(1)(b); and operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood contrary to § 346.63(1)(am).

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

2

rolled down her window, he "detect[ed] a faint and transient odor consistent with the odor of burned marijuana." At trial, the officer testified that he "briefly detected a faint and transient odor which smelled like raw marijuana and burned marijuana, but it was very brief, kind of as the wind swirled."

¶4 The officer asked Gill for his driver's license and learned that it had been revoked. He returned to his squad car and wrote a citation for operating without a license and a warning for speeding.

¶5 After the officer returned to Gill's vehicle, he noticed a rolled cigarette in the cup holder between Gill and his passenger that was consistent in appearance with a burned marijuana cigarette, sometimes referred to as a "roach." Gill handed it to the officer, and the officer observed that it contained a small amount of a burned and raw substance consistent with the appearance and odor of marijuana. He remarked that "it looks kind of like a roach" and asked Gill when he last smoked. Gill said he did not know, and that the marijuana cigarette was "old as hell."

¶6 The officer directed Gill to step out of the vehicle and conducted a pat-down search of his outer clothing.[4] The officer later indicated in his police report and at trial that he detected a light odor of an intoxicating beverage when he was standing downwind from Gill. The officer told Gill to sit in his squad car, stating that "no one is under arrest." The officer then asked the passenger to exit the vehicle and patted her clothing down. After the officer asked whether there was "anything else" in the vehicle, the passenger indicated that the cooler in the

---

[4] *See* ***Terry v. Ohio***, 391 U.S. 1 (1968).

backseat contained alcoholic beverages. The officer remarked that he could "smell weed on [the passenger's] breath" and asked if she had smoked marijuana that day. The passenger responded that she does not smoke marijuana and blew towards the officer so that he could smell her breath. The officer indicated that he did not smell marijuana on her breath, and he suggested that the smell might be "coming from the car or … from the roach" that he had placed in his pocket. He then directed the passenger to sit in his squad car, again stating that "no one is under arrest."

¶7    The officer proceeded to search Gill's vehicle, locating an open and partially consumed bottle of whiskey within reach of the driver's seat. When a second trooper arrived on the scene, the officer was recorded telling his colleague that he had found a "roach" in the cup holder, that the officer "didn't smell anything except cigarettes and air freshener," that he was going to "put [Gill] through field [sobriety testing]," and that he was going to give the passenger a preliminary breath test "because she's the only valid driver."

¶8    The officer continued searching the vehicle and discovered a second rolled cigarette that smelled of burned marijuana. He later wrote in his police report that he found the second cigarette in a compartment in the armrest of the driver's side door. At trial, he initially testified he found it by the passenger floorboard but, upon having his recollection refreshed by his report, he testified that "[i]t appears" he had reported that the second marijuana cigarette "was in the driver's door pocket."

¶9    Following the vehicle search, the officer asked Gill to step out of the squad car and the two began talking. The officer asked about the bottle of whiskey, and Gill indicated it was "an old bottle." The officer told Gill that it was

illegal to have "open containers in the car," and that the bottle had been "in perfect reach [of] the driver." Gill denied that he had been drinking that night. The officer indicated that he was going to do some tests, and he asked, "when's the last time you smoked?" Gill responded that it was "probably yesterday" and estimated that it had been around midnight the day before. When the officer sought clarification, Gill indicated that he meant that it had been more than 24 hours since he last smoked.[5]

¶10 The officer then subjected Gill to field sobriety testing, and he determined that Gill exhibited signs of impairment. The officer placed Gill under arrest, and Gill consented to having his blood drawn for chemical testing. The State tested Gill's blood sample, and the results indicated that Gill's blood contained a detectable amount of delta-9 THC, which is the active ingredient in marijuana. The State also tested one of the cigarettes seized from Gill's vehicle, which also tested positive for THC.

¶11 The State charged Gill with one count of possession of THC in violation of WIS. STAT. § 961.41(3g)(e), and one count of operating a motor vehicle while intoxicated in violation of WIS. STAT. § 346.63(1)(a). The State later filed an amended complaint, adding a third criminal count of operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood in violation of § 346.63(1)(am). The State issued Gill traffic citations for driving with a suspended license and with an open container of intoxicants.

---

[5] The officer also asked Gill to consent to a preliminary breath test. The results of those tests were not admitted at trial, and the circuit court sustained trial counsel's objection when the State asked the trooper about that topic.

¶12    Gill's case proceeded to a two-day jury trial. At the trial, the State's witnesses included the officer who conducted the traffic stop and searched Gill's vehicle, and it introduced into evidence the portions of the officer's squad-camera footage during which the officer administered field sobriety testing. The State also presented testimony from, among others, the chemist who tested Gill's blood for the presence of THC and the forensic scientist who tested the contents of one of the cigarettes seized from the vehicle, and it introduced the lab results and a portion of the officer's police report as exhibits.

¶13    The focus of Gill's defense was on attacking the charge of operating while under the influence of a restricted controlled substance. Trial counsel noted that the traffic stop had lasted more than 40 minutes before the officer asked Gill to perform field sobriety tests, and that, up until that point, the officer had not observed any signs of impairment. Counsel extensively cross-examined the officer about whether field sobriety testing is effective at detecting marijuana impairment, as well as the officer's "process" for evaluating the results of such testing. Counsel emphasized that the amount of THC detected in Gill's blood was just above the reporting threshold, and that the chemist who tested Gill's blood could not testify as to when Gill had last consumed marijuana or whether he was impaired.

¶14    Trial counsel's strategy did not appear to fundamentally challenge the possession of marijuana charge or the charge of operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood. At most, counsel emphasized that the officer had smelled marijuana on Gill's passenger and not on Gill, and he cross-examined the chemist about the reporting threshold for THC.

¶15    The jury found Gill guilty of possessing THC, and of operating a motor vehicle with a detectable amount of THC in his blood.  It acquitted Gill of the charge of operating a motor vehicle while under the influence of a controlled substance.

¶16    Following his conviction, Gill filed a motion for postconviction relief alleging ineffective assistance of counsel.  Gill alleged that trial counsel was ineffective for failing to file a pretrial motion to suppress evidence regarding the field sobriety tests and the chemical testing of Gill's blood.  Gill also alleged that the officer's statements and actions at the scene, as captured on the squad-camera footage, were inconsistent with the statements in his police report and his testimony at trial regarding the odors the officer smelled during the stop.  Gill argued that trial counsel had been ineffective for failing to more effectively bring out these alleged inconsistencies during trial.

¶17    The circuit court held a *Machner* hearing.  Trial counsel testified that he had not filed a motion to suppress because the officer found "used" marijuana in the vehicle, and counsel's judgment was that a suppression motion would have been denied.  In response to questioning about the officer's allegedly inconsistent remarks regarding the odors he detected during the traffic stop, trial counsel acknowledged that such alleged inconsistencies could form the basis of a motion to suppress, but that "the way the evidence came out at trial … crystallized this issue in a way that I didn't fully recognize prior to trial."  When asked about his examination of the officer, trial counsel testified that he had no strategic reason for not cross-examining the officer about his allegedly inconsistent statements.

¶18    The officer also testified at the *Machner* hearing.  For his part, the officer reaffirmed that he smelled a transient odor of marijuana when he initially

approached Gill's vehicle, and that he "believed" that he had detected the odor of intoxicants when speaking with Gill during the pat-down search. The officer was also asked about a portion of the squad-camera footage that had not been played to the jury—as mentioned, during that portion of the footage, the officer was recorded telling a second trooper that he "didn't smell anything except cigarettes and air freshener." During the *Machner* hearing, the officer clarified that he was telling his colleague about the odors he detected when he searched Gill's vehicle, and that the officer was not commenting on the other odors he had detected during the course of the stop.

¶19 The circuit court issued an oral ruling denying Gill's postconviction motion. The court concluded that trial counsel was not ineffective with regard to a potential motion to suppress because the court would have denied any such motion. As the court explained, it found the officer's testimony to be credible, and it concluded that, at the time "Gill was requested to perform field sobriety tests," there was reasonable suspicion that Gill had committed an OWI-related offense, the investigation of which would be furthered by subjecting Gill to field sobriety testing. The court also concluded that trial counsel was not ineffective for failing to cross-examine the officer on the specific topics raised in Gill's postconviction motion. I discuss Gill's arguments and the court's specific rulings at greater length below.

¶20 The circuit court entered an order denying the postconviction motion. Gill appeals.

## DISCUSSION

¶21 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of

counsel." ***State v. Breitzman***, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (quoting ***State v. Lemberger***, 2017 WI 39, ¶16, 374 Wis. 2d 617, 893 N.W.2d 232). "The same right is guaranteed under Article I, Section 7 of the Wisconsin Constitution." ***Id.*** Gill asserts that he was denied the effective assistance of counsel, and that his judgment of conviction should be vacated on that basis.

¶22 To demonstrate that counsel's assistance was ineffective, a defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). Counsel's performance is constitutionally deficient only if it falls below an objective standard of reasonableness. ***State v. Thiel***, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." ***Strickland***, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***

¶23 "Whether a defendant was denied effective assistance of counsel presents a mixed question of law and fact." ***Breitzman***, 378 Wis. 2d 431, ¶37. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous[.]" ***Id.*** Whether counsel's conduct constitutes ineffective assistance is a question of law that I review de novo. ***Id.***

¶24 On appeal, Gill renews his two theories of ineffective assistance of counsel. He first argues that trial counsel was ineffective for failing to file a pretrial motion to suppress, and second, that counsel's cross-examination of the officer who conducted the stop was ineffective. I address these arguments in turn.

## I.

¶25 Gill argues that, had trial counsel filed a motion to suppress the results of the field sobriety and blood tests, the motion would have been granted, and he would not have been convicted of operating a motor vehicle with a detectable amount of THC in his blood.[6] In determining whether counsel was ineffective for failing to file a suppression motion, I consider the merits of the motion that counsel could have filed. *See State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16 ("Counsel does not perform deficiently by failing to bring a meritless motion."). I analyze whether a motion would have been successful under a two-part standard of review: I will uphold the findings of fact by the circuit court unless they are clearly erroneous, and I will independently review whether those facts warrant suppression. *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562.

¶26 The Fourth Amendment to the United States Constitution and Article I, Section 11, of the Wisconsin Constitution protect persons against unreasonable searches and seizures. The temporary detention of individuals during a traffic stop, "even if only for a brief period [of time] and for a limited purpose, constitutes a 'seizure' of 'persons'" within the meaning of these constitutional provisions. *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765

---

[6] Gill's postconviction motion and appeal purport to challenge both counts for which he was convicted. However, Gill fails to explain how suppression of evidence regarding the field sobriety and blood testing would create a reasonable probability of a different outcome on the possession of THC charge. Gill does not challenge the admission of evidence that he possessed the marijuana cigarette or the lab report stating that the marijuana cigarette contained THC, and I therefore consider Gill's argument about suppression only as it relates to his conviction for operating with a detectable amount of THC in his blood.

N.W.2d 569 (citation omitted). Accordingly, a traffic stop must be reasonable under the circumstances. *Id.*

¶27 A traffic stop is reasonable at its inception if an officer "reasonably suspects" that a person has committed or is about to commit a crime or a violation of the non-criminal traffic laws. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999). If, during a valid traffic stop, an officer becomes aware of additional facts that are sufficient to give rise to reasonable suspicion that the person has committed or is committing an offense separate and distinct from the offense that initially prompted the traffic stop, the stop may be extended and a new investigation begun. *State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999). Field sobriety tests further the investigation of OWI-related offenses, and such tests are lawfully administered during a traffic stop if supported by reasonable suspicion that the suspect has committed an OWI-related offense. *State v. Hogan*, 2015 WI 76, ¶37, 364 Wis. 2d 167, 868 N.W.2d 124; *State v. Adell*, 2021 WI App 72, ¶18, 399 Wis. 2d 399, 966 N.W.2d 115.

¶28 Here, there is no dispute that the officer stopped Gill's vehicle because it was speeding, and that the initial stop was valid. Gill likewise does not challenge that, upon observing the first partially smoked "roach" in Gill's cup holder, the officer had probable cause to search his vehicle. *See State v. Secrist*, 224 Wis. 2d 201, 209, 589 N.W.2d 387 (1999). Gill's only argument in favor of suppression is that the officer lacked reasonable suspicion to believe that Gill had committed an OWI-related offense sufficient to expand the scope of the initial traffic stop to administer the field sobriety tests. I therefore consider whether the facts known to the officer at the time he directed Gill to perform field sobriety tests would give a reasonable officer reasonable suspicion to believe that Gill had been operating his vehicle while under the influence of an intoxicant or a

11

controlled substance in violation of WIS. STAT. § 346.63(1)(a); operating with a prohibited alcohol concentration in violation of § 346.63(1)(b); or operating with a detectable amount of a restricted controlled substance in the blood in violation of § 346.63(1)(am).[7]

---

[7] Gill devotes a large portion of his briefing to an argument about timing. Specifically, Gill argues that the proper moment to measure reasonable suspicion is the moment that the officer was recorded telling his colleague that he planned to subject Gill to field sobriety testing, which occurred approximately 7 minutes before the officer directed Gill to perform the tests. According to Gill, reasonable suspicion should be evaluated at that moment because that was when the officer subjectively resolved to perform the tests.

Gill's focus on timing is somewhat beside the point in this case. Even if I were to consider only those facts that were known to the officer at the time he made his comment to his colleague, I would still conclude that the officer had reasonable suspicion to conduct field sobriety testing.

That said, Gill's argument about timing is legally incorrect. Our cases do not measure reasonable suspicion from the moment an officer subjectively decides to conduct a search or seizure, in large part because reasonable suspicion is an objective inquiry. *State v. Mata*, 230 Wis. 2d 567, 574, 602 N.W.2d 158 (Ct. App. 1999). Our cases do not consider what actually motivated an officer to search, and instead consider whether there was reasonable suspicion for a search or seizure immediately before the search or seizure took place. *See State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990) (citing *Terry*, 392 U.S. at 21-22). Therefore, it does not matter whether an officer's assessment of reasonable suspicion at the time the officer subjectively decides to perform field sobriety testing holds up, so long as a reasonable officer would have had reasonable suspicion at the time the officer directs a suspect to perform those tests.

Here, the initial traffic stop was a lawful seizure, and the officer was engaged in a lawful search of Gill's person and vehicle up through the point in time that the officer directed Gill to perform field sobriety tests. An expansion of a lawful traffic stop to conduct field sobriety testing is the expansion of a lawful seizure, and Wisconsin cases have assessed reasonable suspicion as of the moment an officer asks a suspect to perform field sobriety tests. *See, e.g.*, *Town of Freedom v. Fellinger*, No. 2013AP614, unpublished slip. op. ¶¶22-23 (WI App Aug. 6, 2013) (considering the moment that the officer requested suspect leave his vehicle to perform field sobriety tests); *Village of Little Chute v. Rosin*, No. 2013AP2536, unpublished slip. op. ¶17 (WI App Feb. 25, 2014) ("an officer must have reasonable suspicion that the driver is impaired before requesting field sobriety tests"); *Village of Ashwaubenon v. Bowe*, No. 2016AP594, unpublished slip. op. ¶12 (WI App Feb. 14, 2017) ("an officer may request a driver to perform field sobriety tests when the officer has reasonable suspicion" (citing *County of Jefferson v. Renz*, 231 Wis. 2d 293, 310, 603 N.W.2d 541 (1999)). I cite authored, unpublished, one-judge opinions throughout this opinion for their persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

¶29 The test for reasonable suspicion is grounded in common sense—what would a reasonable police officer reasonably suspect, in light of their training and experience, based on the totality of the facts and circumstances and the reasonable inferences to be drawn therefrom. *State v. Post*, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634. Reasonable suspicion is not a high bar, *State v. Genous*, 2021 WI 50, ¶8, 397 Wis. 2d 293, 961 N.W.2d 41, and "the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause[.]" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted).

¶30 Here, the officer observed signs of Gill's risk-taking behavior and nonconformity with the law. The officer observed Gill driving significantly in excess of the speed limit at 4:00 a.m. on a Friday morning. *See Adell*, 399 Wis. 2d 399, ¶25 (a defendant's speeding contributes to reasonable suspicion because it shows risk-taking behavior and nonconformity with the law); *Post*, 301 Wis. 2d 1, ¶36 (time of day can be relevant to a reasonable suspicion inquiry, even if it is not bar time). The officer also learned that Gill was driving without a valid license, which is a civil traffic violation that also suggests nonconformance with the law. *See id.*; *Town of Freedom v. Fellinger*, No. 2013AP614, unpublished slip. op. ¶24 (WI App Aug. 6, 2013).

¶31 More significantly, the officer, who was trained in identifying the odor and appearance of marijuana, observed several signs of recent marijuana consumption. The officer detected the faint and transient odor of marijuana when he first made contact with Gill's vehicle. *See Adell*, 399 Wis. 2d 399, ¶23 (incriminating odors add to reasonable suspicion); *see also Secrist*, 224 Wis. 2d at 210-11 (citing with approval holding from *State v. Judge*, 275 N.J. Super. 194,

645 A.2d 1224, 1228 (N.J. App. Div. 1994), that the odor of burned marijuana in a vehicle creates an inference that marijuana is not only physically present, but also that some of it has been recently smoked). The officer also found two partially smoked cigarettes that appeared to contain marijuana and that had not yet been discarded—one in the cup holder between Gill and his passenger, and the second in a pocket in the car door. Gill tacitly admitted to consuming marijuana by stating that he could not recall the last time that he had smoked. *See id.* Although Gill stated that the marijuana cigarette in the cup holder was "old as hell," the officer did not need to accept Gill's assertion at face value. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 (officers need not accept suspect's innocent explanations for suspicious behaviors); *Hogan*, 364 Wis. 2d 167, ¶¶36, 50 (same).

¶32 Finally, in addition to the signs of recent marijuana use, the officer observed several signs of alcohol consumption. The cooler full of alcohol in the back seat was lawful, but when viewed together with the early morning hour, the officer could reasonably infer that Gill was coming from some kind of gathering where alcohol had been consumed. The officer detected an odor of intoxicating beverages when patting down Gill's clothing, *see Renz*, 231 Wis. 2d at 316-17 (odor of intoxicants is an indicator of intoxication), and Gill denied drinking at all, despite the odor of alcohol coming from his person. *See County of Jefferson v. Wedl*, No. 2022AP328, unpublished slip. op. ¶40 (WI App Sept. 9, 2022) (a suspect's denial of obviously true facts may suggest consciousness of guilt). The open and partially consumed bottle of whiskey within reach of the driver's seat was not only a civil traffic violation in itself, again evincing Gill's nonconformity with the law, but like the partially consumed marijuana cigarettes, it led to an inference that Gill had consumed alcohol while in the vehicle.

14

¶33 Gill asks me to disregard several of the above facts as clearly erroneous, but none of his arguments are meritorious.

¶34 Gill first challenges the circuit court's findings that the officer detected the faint and transient odor of marijuana when he first approached the vehicle, and the court's finding that the officer detected the light odor of an intoxicating beverage when he was standing downwind of Gill. Gill points to the fact that the squad-camera footage does not show the officer visibly or audibly reacting to those odors, and he contrasts this lack of reaction with the portion of the footage during which the officer commented that he smelled marijuana on the passenger's breath. Gill also points to the officer's statement to his colleague that all he smelled was "cigarettes and air freshener," and he argues that, had the officer actually detected the odor of marijuana near the vehicle or the odor of intoxicants downwind of Gill, he would have mentioned those facts to his colleague at the scene. Gill argues that the evidence shows that, contrary to his police report and testimony, the officer did not actually smell marijuana when he first approached the vehicle or the odor of intoxicants on Gill.

¶35 These arguments fail to show that the circuit court's findings are clearly erroneous. I will not substitute my judgment for that of the circuit court as to the officer's credibility, *see Turner v. State*, 76 Wis. 2d 1, 18, 250 N.W.2d 706 (1977), and here, the court explicitly found the officer's testimony on these points to be credible. For my part, I do not view the officer's reactions on the squad-camera footage to be inconsistent with his statements in his police report or trial testimony, nor do I view the fact that the officer did not specifically tell his colleague that he had detected those odors as an indication that he did not actually detect them.

15

¶36    Gill also challenges the circuit court's finding that the officer discovered a second marijuana cigarette in the driver's side door compartment. Gill argues that this finding is clearly erroneous because the officer initially testified that he found the second marijuana cigarette on the passenger side of the vehicle, and only changed his testimony about its location after the prosecutor refreshed his recollection with his police report. Gill's argument is not persuasive for two reasons. First, the trial took place four years after the stop, and the fact that the officer did not recall the location of the second marijuana cigarette without the assistance of his police report does not render his testimony incredible. And second, the location of the second marijuana cigarette is not especially material to the reasonable suspicion analysis—I would still conclude that the officer had reasonable suspicion to conduct field sobriety testing, even if the officer found the second marijuana cigarette on the passenger side of the vehicle, or if the officer did not find the second marijuana cigarette at all.[8]

---

[8] Gill also points to several other alleged inaccuracies or inconsistencies in various statements by the officer, but he fails to convince me that the officer's statements were inaccurate or inconsistent in any way that matters. For example, Gill states that the officer "incorrectly estimated [at trial] that approximately 10-15 minutes had passed" from when he "first had contact with Mr. Gill" to when he conducted field sobriety testing, when in reality nearly 40 minutes had passed. However, Gill does not explain how the officer's inaccurate estimate detracts from reasonable suspicion or would support a motion to suppress. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (an appellate court may decline to review general statements that are not developed themes reflecting any legal reasoning). As another example, Gill argues that the officer described the odor of marijuana he initially detected on the passenger differently in the squad-camera footage and in his police report. He points out that, in the footage, the officer claimed to detect the odor of marijuana *on the passenger's breath*, but in his police report claimed to detect the faint and transient odor *near the passenger*. However, Gill fails to explain how this purported inconsistency affects the reasonable suspicion analysis, particularly in this case in which, upon further investigation, the officer determined he did not smell the odor of marijuana on the passenger's breath and instead attributed it to the marijuana cigarette he had confiscated and had placed in the pocket of his pants.

16

¶37    Gill also argues that, even if the circuit court's findings of fact are not clearly erroneous, several of the facts found by the court add little to the reasonable suspicion analysis.  For example, he argues that the fact that the officer detected an odor of marijuana when he first approached the vehicle is immaterial because the officer could not necessarily attribute the odor to Gill.  I disagree.  That the officer detected any odor of marijuana near the vehicle creates a reasonable inference that one or both of the vehicle's occupants recently consumed marijuana.  Reasonable suspicion is a low bar, *Genous*, 397 Wis. 2d 293, ¶8, and the officer need not have ruled out the passenger as a source of the odor to reasonably suspect that Gill had committed an OWI-related offense, sufficient to conduct field sobriety testing.

¶38    Gill next argues that the presence of an "old roach" does not contribute to reasonable suspicion that Gill was driving under the influence.  I disagree.  Marijuana is illegal whether old or new, raw or burned, *see* WIS. STAT. § 961.41(3g)(e), as is operating a vehicle with a detectable amount of THC in the blood.  *See* WIS. STAT. § 346.63(1)(am) (prohibiting anyone from operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood); WIS. STAT. § 340.01(50m) (defining restricted controlled substance to include THC, the primary active ingredient in marijuana); *see also **State v. Hubbard***, No. 2014AP738-CR, unpublished slip. op. ¶8 (WI App Aug. 13, 2014).  Its presence in the vehicle contributed to reasonable suspicion that Gill may have had a detectable amount of THC in his blood and here, the fact that both marijuana cigarettes had been smoked but not yet discarded, and at least one was within reach of the driver's seat, further enhanced that suspicion.

¶39    Finally, Gill points out that the officer did not observe erratic driving or physical indicia of intoxication.  However, "there is no requirement that officers

make these observations before requesting field sobriety tests." *Fellinger*, No. 2013AP614, ¶24. A suspect may violate WIS. STAT. § 346.63(1)(am) without actually being impaired. Here, the officer observed sufficient signs of marijuana consumption from which it was reasonable to infer that Gill had recently consumed that substance and might have been driving with a detectable amount of THC in his blood.

¶40 For all these reasons, I conclude that, based on the totality of the circumstances, the officer had reasonable suspicion to believe that Gill operated a motor vehicle with a detectable amount of THC in his blood, and I thus need not reach the issue of whether the officer had reasonable suspicion to believe that Gill had been operating a motor vehicle under the influence of an intoxicant or with a prohibited blood alcohol concentration. I therefore conclude that the officer reasonably expanded the traffic stop to perform field sobriety tests, and accordingly, the circuit court would have denied any motion to suppress the results of the field sobriety testing and the blood test that followed. Therefore, counsel did not perform deficiently by failing to file a motion, and, for the same reason, Gill has not shown that he was prejudiced by counsel's failure to do so.

## II.

¶41 Gill also argues that trial counsel's examination of the officer was ineffective. Specifically, he asserts that counsel should have cross-examined the officer about the fact that he told his colleague that all he smelled was "cigarettes and air freshener," and the fact that the squad-camera footage shows him initially reacting to the smell of marijuana that he attributed to the passenger's breath. Gill also argues that counsel was ineffective for allowing the officer to "change his testimony" about where he found the second marijuana cigarette after his memory

18

was refreshed by reading his police report.[9]  Gill contends that, had trial counsel exposed what Gill characterizes as contradictions in the officer's various statements, the officer's credibility would have been so thoroughly damaged that the jury would not have found Gill guilty of possession of marijuana or operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood.  These arguments fail for the reasons explained by the circuit court, which Gill does not show to be erroneous.

¶42    In regard to the officer's recorded statement to his colleague about "cigarettes and air freshener," the circuit court found that this evidence was not material to the issues at trial, and thus counsel's performance was neither deficient nor prejudicial.  As the court explained, the jury was tasked with determining whether Gill possessed THC and drove his vehicle while intoxicated or with a detectable amount of THC in his blood—not about whether the officer lawfully expanded the traffic stop to conduct field sobriety testing.  The court further explained that, had trial counsel cross-examined the officer about his "cigarettes and air freshener" statement, the officer would have provided the same clarification that he provided at the *Machner* hearing—that the officer was telling his colleague about the odors he detected when he searched the vehicle, and was not commenting on the odors he had smelled when he first approached the vehicle,

---

[9] Throughout his briefing, Gill repeatedly characterizes the officer's police report as "admittedly inaccurate," and Gill asserts that the officer "admitted" during the *Machner* hearing that his police report "did not reflect what occurred on the video."  Gill supplies a single citation to the portion of the hearing transcript in which the officer supposedly admits that his report is inaccurate.  In the cited portion, the officer acknowledges that his report states that he smelled marijuana *near* the passenger, but that the squad-camera footage shows the officer initially attributing the smell to the passenger's breath.  I do not view the cited testimony as an admission that the officer's report is inaccurate, and I caution Gill's attorney to be more careful in her representations about the record.

when he conducted the pat-down searches, or when he examined the marijuana cigarette.

¶43   In regard to trial counsel's failure to cross-examine the officer about his reaction to the smell of marijuana on the passenger, the circuit court again found no deficiency and no prejudice.  It explained that the trial was not about "whether the passenger possessed the marijuana or was driving with a restricted controlled substance," but was instead about whether Gill had committed those offenses.

¶44   Finally, in regard to trial counsel "allow[ing] [the officer] to change his testimony" about where he discovered the second marijuana cigarette, the circuit court found no deficient performance.  It concluded that, had trial counsel objected to the prosecutor's attempt to refresh the officer's recollection about where he found that cigarette, counsel's objection would have been overruled.

¶45   I agree with and adopt the circuit court's analysis on these three points.  I further conclude that, for reasons I now explain, the officer's testimony and credibility on these topics was not directly material to the two charges for which Gill was convicted, and that there is not a reasonable probability of a different outcome on either of these charges, even if counsel had more thoroughly addressed these topics at trial.

¶46   First, Gill was convicted of possession of THC, in violation of WIS. STAT. § 961.41(3g)(e).  That charge required proof of three elements:  (1) the defendant possessed a substance; (2) the substance was THC; and (3) the defendant knew or believed that the substance was THC.  WIS JI—CRIMINAL 6030 (2022).  The jury instructions define "possession" as "knowingly [having] actual physical control over a substance." *Id.*  The instructions clarify that "[p]ossession

may be shared with another person" and that "[a] substance is in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the substance." *Id.*

¶47   Here, the State established the essential elements of this offense through the officer's testimony that he discovered a marijuana cigarette in the cup holder of Gill's vehicle and that Gill acknowledged its presence; photographs of the two marijuana cigarettes the officer seized; and the lab report indicating that one of the cigarettes contained THC.  The State did not need to prove that the officer detected the odor of marijuana upon his initial approach of Gill's vehicle to prove that Gill possessed marijuana.  And the fact that the officer initially detected the odor of marijuana on Gill's passenger did not provide Gill with a compelling defense to the charge, given that possession may be shared among two individuals. *See id.*   Thus, Gill has not shown that further cross-examination on these points would have created a reasonable probability of a different outcome on the marijuana possession charge.

¶48   The same can also be said for Gill's conviction of operating with a detectable amount of a restricted controlled substance in his blood, in violation of WIS. STAT. § 346.63(1)(am).  That charge required proof of two elements:  (1) the defendant drove a motor vehicle on a highway; and (2) the defendant had a detectable amount of a restricted controlled substance (here, delta-9 THC) in his blood at the time the defendant drove a motor vehicle.  WIS JI—CRIMINAL 2664B.  The State proved those two elements by introducing evidence that Gill had been driving on a highway, and the lab report indicating his blood contained a detectable amount of delta-9 THC when the sample was taken. *See id.* (the jury may infer that a defendant had a detectable amount of a restricted controlled substance in his blood at the time of driving based on those two facts).  Whether or

21

not the officer smelled burned marijuana emitting from Gill's vehicle, or detected an odor of marijuana on Gill's passenger, or discovered the second marijuana cigarette on the passenger side of Gill's vehicle, are all issues that are not material to those two elements. Accordingly, Gill cannot show he was prejudiced by trial counsel's alleged failure to cross-examine the officer about these points.

¶49 Gill may be arguing that issues with the officer's credibility would have been so paramount to the jury that, had the officer's alleged contradictions been exposed, the jury would have disregarded all of the State's evidence and the jury instructions in their entirety. I disagree for two reasons. First, as noted above, I do not find the officer's testimony to be inconsistent on these points. Second, I am not persuaded that, had the jury questioned the officer's credibility on the points discussed above, it may have disregarded the State's evidence on other points not affected by credibility issues. I am to presume that the jury follows the instructions given to it by the circuit court, *see* **State v. Truax**, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989); **State v. Deer**, 125 Wis. 2d 357, 364, 372 N.W.2d 176 (Ct. App. 1985), and I have no reason to speculate that the jury would have engaged in nullification had trial counsel exposed immaterial inconsistencies in the officer's testimony.

## CONCLUSION

¶50 For the foregoing reasons, I affirm Gill's judgment of conviction and the circuit court's order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

22