**2021 WI App 72**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2020AP2135-CR

Complete Title of Case:

**STATE OF WISCONSIN,**

        **PLAINTIFF-APPELLANT,**

   **V.**

**NICHOLAS REED ADELL,**

        **DEFENDANT-RESPONDENT.**

---

| | |
|---|---|
| Opinion Filed: | September 16, 2021 |
| Submitted on Briefs: | August 12, 2021 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

---

Appellant
ATTORNEYS:          On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kara L. Janson*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

Respondent
ATTORNEYS:          On behalf of the defendant-respondent, the cause was submitted on the brief of *Marcus Berghahn*, of *Hurley Burish, S.C.*, Madison.

**2021 WI App 72**

COURT OF APPEALS
DECISION
DATED AND FILED

**September 16, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP2135-CR**

STATE OF WISCONSIN

Cir. Ct. No.  **2019CF388**

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

NICHOLAS REED ADELL,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge.  *Reversed and cause remanded for further proceedings*.

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

¶1     KLOPPENBURG, J.  The State of Wisconsin appeals the circuit court's order granting Nicholas Reed Adell's motion to suppress evidence arising

from a traffic stop. The circuit court determined that the arresting deputy lacked reasonable suspicion to extend the traffic stop to administer field sobriety tests and, on that basis, granted Adell's motion to suppress the field sobriety test results and subsequent evidence of operating with a prohibited alcohol concentration. The State argues that the circuit court erroneously granted the motion to suppress.

¶2    We conclude that the deputy properly extended the stop to investigate whether Adell was operating with a prohibited alcohol concentration because the totality of the facts and circumstances gave rise to reasonable suspicion of that offense, and that the deputy lawfully administered field sobriety tests in furtherance of that investigation because the tests were likely to support or dispel the deputy's suspicion. Accordingly, we reverse the circuit court's order and remand for further proceedings.

## BACKGROUND

¶3    The State filed a criminal complaint charging Adell with fifth-offense operating a motor vehicle while intoxicated and fifth- or sixth-offense operating with a prohibited alcohol concentration, based on evidence obtained following the extension of a traffic stop for speeding. Adell filed a suppression motion arguing that the traffic stop was unlawfully extended when the arresting deputy asked Adell to step out of the vehicle and perform field sobriety tests. Adell sought suppression of all evidence obtained during and after the field sobriety tests.

¶4    The circuit court held an evidentiary hearing at which the arresting deputy, Brian Schlough, testified to the following facts, none of which are disputed on appeal.

2

¶5      At the time of the stop, Schlough had seventeen years of experience as a deputy with the Sauk County Sheriff's Department, had received training in investigating incidents of suspected operating while intoxicated, and had made about 150 arrests on charges of operating while intoxicated.

¶6      At 5:50 a.m. on August 1, 2019, a Thursday, Schlough made a traffic stop of a vehicle based on a radar reading showing that the vehicle was travelling fourteen miles over the fifty-five miles per hour speed limit.  Schlough approached the vehicle and spoke to the driver, identified as Adell, through the open driver's side window.  Adell apologized for speeding and said that he was running late for work.  Schlough noticed an odor of intoxicants coming from inside the vehicle and observed a passenger in the front seat.  Schlough asked Adell if he had consumed any alcohol, and Adell said no.  Schlough asked Adell if he had consumed alcohol the previous evening, and Adell said yes.

¶7      Schlough returned to his patrol car and "ran Mr. Adell through dispatch."  Schlough learned that Adell had four prior operating while intoxicated convictions and was subject to a .02 blood alcohol concentration (BAC) restriction.  Based on his training and experience he knew that a person would have to consume "very little" alcohol to exceed the .02 BAC limit, and that drinking one beer could put a person over that limit.

¶8      Schlough returned to Adell's vehicle and asked Adell to step out of the vehicle to perform field sobriety tests.

¶9      Schlough did not observe any illegal or "suspicious" driving activity other than the speeding before the stop, and he did not observe anything suspicious "about the way that [Adell] talked or what he said" during the stop.

¶10    After supplemental briefing, the circuit court determined that Schlough did not have "sufficient facts" to extend the stop to administer field sobriety tests. Accordingly, the circuit court granted Adell's motion to suppress the field sobriety tests results and subsequent evidence of operating with a prohibited alcohol concentration.

¶11    The State appeals.

## DISCUSSION

¶12    The parties agree that there was reasonable suspicion to support the initial traffic stop, namely, the speeding allegation. Their dispute centers on the extension of the stop, and they frame their dispute as whether there was reasonable suspicion to extend the traffic stop for the administration of field sobriety tests. Consistent with the applicable law, as we explain below, we reframe their dispute and conclude as follows: the deputy had reasonable suspicion to extend the traffic stop to investigate an operating with a prohibited alcohol concentration offense, and he lawfully administered field sobriety tests in furtherance of that investigation. Accordingly, we reverse the circuit court order granting Adell's suppression motion.

¶13    We first state the standard of review, next summarize applicable legal principles, then apply those principles to the facts from the suppression hearing and explain our conclusion, and finally address and reject Adell's arguments to the contrary.

### I.  Standard of Review

¶14    This court analyzes the grant or denial of a suppression motion under a two-part standard of review: we uphold the circuit court's findings of fact unless they are clearly erroneous, and we independently review whether those facts warrant

suppression. *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562. "Whether there is probable cause or reasonable suspicion to stop a vehicle is a question of constitutional fact." *State v. Popke*, 2009 WI 37, ¶10, 317 Wis. 2d 118, 765 N.W.2d 569. We review de novo the ultimate question of "whether the facts as found by the [circuit] court meet the constitutional standard." *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48.

## II. *Applicable Legal Principles*

¶15     The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect individuals against unreasonable searches and seizures.[1] "The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *Popke*, 317 Wis. 2d 118, ¶11 (quoted source omitted). Therefore, the "stop must not be unreasonable under the circumstances." *Id.* "The reasonableness of a traffic stop involves a two-part inquiry: first, whether the initial seizure was justified and, second, whether subsequent police conduct 'was reasonably related in scope to the circumstances that justified' the initial interference." *State v. Smith*, 2018 WI 2, ¶10, 379 Wis. 2d 86, 905 N.W.2d 353. A traffic stop is reasonable at its inception if it is supported by reasonable suspicion that a traffic violation has been or will be committed. *State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143. If such a suspicion exists, an officer "may conduct a traffic stop in order to investigate the circumstances that provoke suspicion," or in other words, "try to

_____

[1] The Fourth Amendment of the United States Constitution states, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." Article I, Section 11 of the Wisconsin Constitution provides, "The right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause …."

obtain information confirming or dispelling the officer's suspicions." ***Id.***, ¶22 (citing ***Berkemer v. McCarty***, 468 U.S. 420 (1984) (internal quotation marks omitted)).

¶16    Most pertinent in this case is the following law. "If, during a valid traffic stop, the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun. The validity of the extension is tested in the same manner, and under the same criteria, as the initial stop." ***State v. Betow***, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999).

¶17    "The question of what constitutes reasonableness is a common sense test. What would a reasonable police officer reasonably suspect in light of his or her training and experience." ***State v. Waldner***, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996) (internal citation omitted). "The reasonableness of a stop is determined based on the totality of the facts and circumstances." ***State v. Post***, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634.

### *III.  Analysis*

¶18    From the legal principles summarized above, "[i]t follows that the legality of the extension of the traffic stop in this case turns on the presence of factors which, in the aggregate, amount to reasonable suspicion that [the defendant] committed a crime the investigation of which would be furthered by the defendant's performance of field sobriety tests." ***State v. Hogan***, 2015 WI 76, ¶37, 364 Wis. 2d 167, 868 N.W.2d 124. We conclude that the deputy here lawfully extended the traffic stop because the totality of the facts as they unfolded established reasonable

suspicion to investigate the offense of operating with a prohibited alcohol concentration, and that he lawfully administered field sobriety tests in furtherance of that investigation because those tests would be likely to support or dispel his suspicion. We first address whether the deputy had reasonable suspicion to investigate the offense of operating with a prohibited alcohol concentration, and we next address whether he properly administered field sobriety tests in furtherance of that investigation.

*A. Reasonable Suspicion to Investigate Offense of Operating with a Prohibited Alcohol Concentration*

¶19    We turn to whether the factors present here established reasonable suspicion that Adell was operating with a prohibited alcohol concentration. *See id.* (legality of extension of stop turns on presence of factors that establish reasonable suspicion of a crime separate from the offense that justified the traffic stop); *Betow*, 226 Wis. 2d at 93 (same).

¶20    One factor is the deputy's training and experience, summarized above. *See Hogan*, 364 Wis. 2d 167, ¶47 (experience of officer is "a plus"); *State v. Allen*, 226 Wis. 2d 66, 74, 593 N.W.2d 504 (Ct. App. 1999) (training and experience of an officer is a factor to be considered in the totality of the circumstances analysis).

¶21    A second factor is that the deputy learned during the stop, before requesting the field sobriety tests, that Adell had four prior operating while intoxicated convictions. *See State v. Goss*, 2011 WI 104, ¶¶2, 24, 338 Wis. 2d 72, 806 N.W.2d 918 (explaining that the existence of prior convictions is an appropriate consideration supporting probable cause to administer a preliminary breath test).

¶22    A third factor is that Adell was subject to a .02 BAC restriction, and that the deputy knew, based on his experience and training, that a person would have

to consume "very little" alcohol to exceed the .02 BAC limit. *See generally* WIS. STAT. § 340.01(46m)(c) (reducing prohibited alcohol concentration standard to .02 if person has three or more prior convictions, suspensions or revocations); *see also* ***Goss***, 338 Wis. 2d 72, ¶¶2, 17, 18, 24, 26 (explaining that a .02 BAC restriction and the officer's knowledge that a very small amount of alcohol would cause a person to exceed the .02 BAC limit are appropriate considerations supporting probable cause to administer a preliminary breath test).

¶23     A fourth factor is that the deputy smelled an odor of intoxicants inside the vehicle. *See **County of Jefferson v. Renz***, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (noting odor of intoxicants in car as supporting probable cause to administer a preliminary breath test).

¶24     A fifth factor is Adell's admission that he had consumed alcohol the evening before, together with the early morning time of the admission, 5:50 a.m. *See **Renz***, 231 Wis. 2d at 316 (noting admission of drinking as supporting probable cause to administer a preliminary breath test). That is, Adell's admission of drinking the evening before has at least some weight as a factor because of the timing of the stop. It is not unreasonable to consider that in the early morning he may still be impaired from drinking at some point during the evening before. This factor may not count for much, given the lack of detail regarding the evening drinking, but we cannot say it counts for nothing.

¶25     A sixth factor is that Adell was speeding, exceeding the fifty-five miles per hour limit by fourteen miles per hour (just over twenty-five percent above the limit). Like the admission of drinking the evening before, speeding alone may count more weakly than other factors. *See **State v. Quitko***, No. 2019AP200, unpublished slip op. ¶11 n.4 (WI App May 12, 2020) (differentiating speeding from

"any other act of poor or suspicion driving").[2] However, the deputy here could reasonably have considered the excessive speeding as a variety of risky driving that may reflect operating with a prohibited alcohol concentration. *See Town of Freedom v. Fellinger*, No. 2013AP614, unpublished slip op. ¶24 (WI App Aug. 6, 2013) (explaining that speeding is a factor contributing to reasonable suspicion of operating while intoxicated because it "showed [the defendant's] nonconformance with the law").

¶26 Considering all six of these factors "in the aggregate," *see Hogan*, 364 Wis. 2d 167, ¶37, we conclude that any police officer in the deputy's position here would reasonably suspect that Adell was operating with a prohibited alcohol concentration.

¶27 Adell argues that the only relevant factors are the .02 BAC restriction and the odor of alcohol from inside the vehicle (the third and fourth factors listed above), and that these two factors do not establish reasonable suspicion to extend the stop. However, as we explain, his discounting of both those and the other four factors is unavailing.

¶28 As to the first, second, third, and fifth factors listed above (the deputy's operating while intoxicated-specific training and experience, Adell's prior convictions, Adell's .02 BAC restriction and the deputy's knowledge that the consumption of very little alcohol can cause a person to exceed the .02 BAC limit, and Adell's admission to drinking the evening before the 5:50 a.m. stop), Adell argues that these factors have no weight because the deputy had no knowledge or experience regarding "how much alcohol an individual may consume before

---

[2] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

9

exceeding a .02 blood alcohol concentration standard." This is a challenge to the deputy's testimony that he understood, based on his training and experience, that consuming "very little" alcohol, as little as one beer, may cause a person to exceed the .02 BAC limit.

¶29    Adell's position on this topic is unclear. However, Adell appears to argue the following. The deputy separately testified that he lacked the training or knowledge to calculate or estimate what any person's BAC would be at a particular time, based on such variables as how much alcohol the person had consumed over a particular earlier time period and how the human body absorbs and eliminates alcohol over time. Adell may intend to argue that this admission about his lack of training or knowledge should have demonstrated to the circuit court that the deputy was not qualified to offer the opinion that only one drink "could" cause a person to exceed the .02 BAC limit. If this is the argument, we reject it. Adell fails to show why the circuit court should have disregarded the deputy's uncontroverted testimony that, based on his training and experience, a person need not drink much alcohol to exceed the .02 BAC limit. *See Goss*, 338 Wis. 2d 72, ¶¶23-24 ("the knowledge that [a] driver is subject to a .02 [BAC limit] that takes very little consumed alcohol to exceed" is appropriate to weigh in favor of an extended stop).

¶30    As to the fourth factor listed above (the odor of intoxicants from inside the vehicle), Adell argues that this factor is entitled to no weight because the deputy did not determine whether the odor was coming from Adell personally. Regardless of whether the odor was coming from Adell, the officer is not required to assume in favor of Adell. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 (police are not required to rule out innocent explanations when a reasonable inference supports reasonable suspicion). While this factor may be weaker than odor of intoxicants from a suspect's person, it is entitled to some weight

supporting reasonable suspicion of the offense of operating with a prohibited alcohol concentration.

¶31     Finally, Adell argues that this case is like *State v. Quitko*, No. 2019AP200, unpublished slip op. (WI App May 12, 2020), in which the defendant had been stopped for speeding and was subject to the .02 BAC restriction. Adell asserts that this court concluded that these facts did not suffice to establish reasonable suspicion to expand the investigation "into whether [the] driver was operating with a prohibited alcohol concentration." However, Adell misrepresents the issue in *Quitko*. Contrary to Adell's assertion, the issue in that case was whether the officer had probable cause to administer a preliminary breath test (a higher standard than reasonable suspicion for an investigative stop, *Renz*, 231 Wis. 2d at 321 (Abrahamson, C.J., concurring)) as part of an investigation into whether the driver was driving *while intoxicated*. *Id.*, ¶¶2, 9. In addition, *Quitko* is easily distinguished on its facts. Unlike the deputy here, the officer there had *no* knowledge or experience regarding how much alcohol an individual may consume before exceeding a .02 BAC limit. *Id.*, ¶19. Also, unlike Adell, the driver in *Quitko* denied that he consumed any alcohol before the stop. *Id.*, ¶24.

¶32     In sum, we conclude that the deputy had reasonable suspicion to extend the stop to investigate the offense of operating with a prohibited alcohol concentration.

### B. Field Sobriety Testing

¶33     Field sobriety tests are "observational tools that law enforcement officers commonly use to assist them in discerning various indicia of intoxication," comprising "visual cues" of a person's "coordination, balance, concentration, speech, ability to follow instructions, mood and general physical condition." *City*

11

*of West Bend v. Wilkens*, 2005 WI App 36, ¶¶1, 20, 278 Wis. 2d 643, 693 N.W.2d 324 (internal quotation marks and quoted source omitted). It cannot be reasonably disputed that field sobriety tests, as tools for observing indicia of intoxication, can further the investigation of the offense of operating with a prohibited alcohol concentration by being likely to support or dispel the suspicion of that offense. This court has stated as much. *See State v. Popp*, No. 2016AP431, unpublished slip op. ¶16 (WI App July 7, 2016) (stating that reasonable suspicion of the offense of operating with a prohibited alcohol concentration justifies administering field sobriety tests); *State v. Dotson*, No. 2019AP1082, unpublished slip op. ¶¶1, 15 (WI App Nov. 24, 2020) (stating that administering field sobriety tests requires reasonable suspicion that a person was operating with a prohibited alcohol concentration *or* while intoxicated).

¶34     Also bearing on this issue, our supreme court has expressly determined that field sobriety tests can further the investigation of the offense of operating with "a detectable amount of a restricted controlled substance in his or her blood." *Hogan*, 364 Wis. 2d 167, ¶¶45-46. As the State notes, neither that offense nor the offense of operating with a prohibited concentration require evidence of impaired driving. *See Goss*, 338 Wis. 2d 72, ¶20 n.18 (noting the difference between WIS. STAT. § 346.63(1)(a) which prohibits operating while "[u]nder the influence of an intoxicant … to a degree which renders him or her incapable of safely driving," and § 346.63(1)(b) which prohibits operating while "[t]he person has a prohibited alcohol concentration"); *see also State v. Blatterman*, 2015 WI 46, ¶68, 362 Wis. 2d 138, 864 N.W.2d 26 (Ziegler, J., concurring) (stating that field sobriety tests may be used to help establish probable cause to arrest a driver subject to the .02 BAC restriction for a violation of operating with a prohibited alcohol concentration, "but are not required, for the seemingly obvious reason that in order

12

to exceed the .02% [BAC] legal limit, the operator need not exhibit any indicia of intoxication or impairment.").

¶35     In *Hogan*, the court considered whether there was reasonable suspicion that the driver had "a detectable amount of a restricted controlled substance in his or her blood." *Hogan*, 364 Wis. 2d 167, ¶45. While the court in *Hogan* concluded that reasonable suspicion was lacking, it also acknowledged that if there had been reasonable suspicion, field sobriety testing would have furthered the investigation of that offense because such testing might have yielded evidence to establish probable cause for a blood draw to prove that the driver had a detectable amount of a restricted controlled substance in his blood. *Id.*, ¶¶45-46, 53. Similarly, in the scenario presented by this case, the deputy could reasonably determine that field sobriety testing might yield evidence to establish probable cause for a preliminary breath test or a blood test to prove that the driver had a prohibited alcohol concentration.

¶36     Adell does not expressly address this aspect of *Hogan*. Rather, he seems to interpret *Hogan* as requiring police who seek to administer field sobriety tests to have reasonable suspicion that the driver was impaired. Accordingly, here Adell argues the deputy lacked the requisite reasonable suspicion for field sobriety testing because, among other alleged gaps in the evidence, he did not first determine that the odor of alcohol came from Adell personally. This argument misconstrues *Hogan*. The court in *Hogan* expressly addressed the situation in which the driver showed no signs of being impaired by alcohol or drugs, and concluded that, when there was reasonable suspicion based on other facts that the driver had a prohibited amount of drugs in his or her blood, field sobriety testing would further the investigation into that offense. *Id.*, ¶¶45-46. Adell does not explain why that reasoning and conclusion would not also apply to the offense of operating with a

13

prohibited amount of alcohol in one's blood. Here, the deputy had, as we have concluded, reasonable suspicion to investigate whether Adell was operating with a blood alcohol concentration above the .02 limit. Thus, under the reasoning in *Hogan*, the deputy needed no additional facts to administer field sobriety tests in furtherance of that investigation.

¶37 Instead of addressing *Hogan*, Adell relies on certain language in *Village of Little Chute v. Rosin*, No. 2013AP2536, unpublished slip op. (WI App Feb. 25, 2014). In that case, this court stated: "To lawfully request a driver perform field sobriety tests, an officer must have some evidence of *impairment*" and "to justify the intrusion of a field sobriety test, an officer must have reasonable suspicion that the driver is impaired before requesting field sobriety tests." *Id.*, ¶¶16, 17 (emphasis in original).

¶38 Adell's reliance on *Rosin* is misplaced. That case concerned whether an officer had reasonable suspicion to administer field sobriety tests *only* in the context of an investigation of the offense of operating while intoxicated. *Id.*, ¶¶18, 20. Read in context, the court made these statements to clarify the unsurprising proposition that when an officer seeks to administer field sobriety tests under the justification that testing would be part of an investigation into whether the driver was operating while intoxicated, the officer must have reasonable suspicion of the offense of operating while intoxicated, which requires proof of impairment. The court also underscored that the reasonable suspicion required to investigate the offense of operating while intoxicated by administering field sobriety tests must be separate from the reasonable suspicion that supported a traffic stop based on suspicion of an unrelated offense. *Id.*, ¶16 ("[A]n officer may not conduct field sobriety tests merely because the officer's traffic stop was supported by reasonable

suspicion."); *see Betow*, 226 Wis. 2d at 94-95. There is no discussion in *Rosin* regarding the offense of operating with a prohibited alcohol concentration.

¶39   Nor is there any discussion of the offense of operating with a prohibited alcohol concentration in the case on which the *Rosin* court relied for the language quoted above, *Renz*, 231 Wis. 2d 293. *Rosin*, No. 2013AP2536, ¶17. In *Renz*, our supreme court defined the probable cause required to administer a preliminary breath test after an officer has lawfully made an investigative stop and the officer's observations of the driver "cause the officer to suspect the driver of operating the vehicle while intoxicated." *Renz*, 231 Wis. 2d at 310. The court stated that, based on the reasonable suspicion of the offense of operating while intoxicated, "the officer may request the driver to perform various field sobriety tests." *Id.* This statement does not require that an officer observe facts suggesting intoxication when administering field sobriety tests upon reasonable suspicion of operating with a prohibited alcohol concentration.

¶40   In sum, we conclude that here, the deputy had reasonable suspicion to investigate the offense of operating with a prohibited alcohol concentration and lawfully administered field sobriety tests in furtherance of that investigation.

## CONCLUSION

¶41   For the reasons set forth above, we reverse the circuit court's order granting Adell's motion to suppress evidence of the field sobriety tests and subsequent evidence of intoxication, and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.