# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 2, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP389-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CM258

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

IAIN A. JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Eau Claire County: SARAH M. HARLESS, Judge. *Affirmed.*

¶1 GILL, J.[1] Iain Johnson appeals a judgment of conviction for operating a motor vehicle while intoxicated (OWI), as a third offense. Johnson argues that the circuit court erred by denying his suppression motion. Specifically,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Johnson contends that the officer who stopped his vehicle lacked reasonable suspicion to expand the scope of the stop by directing him to exit his vehicle in order to perform field sobriety tests. We reject this argument and affirm.

## BACKGROUND

¶2 Following a traffic stop, the State charged Johnson with OWI and operating with a prohibited alcohol concentration (PAC), both as third offenses, as well as possession of tetrahydrocannabinols (THC). Johnson moved to suppress evidence obtained during and after the traffic stop, arguing that the officer who stopped his vehicle impermissibly expanded the scope of the stop to conduct field sobriety tests without the necessary reasonable suspicion to do so.

¶3 The circuit court held a hearing on Johnson's suppression motion, during which the sole witness was State Trooper Steven Wojcik. Wojcik testified that he had been employed in law enforcement for twelve years and six months, that he had been an instructor in standardized field sobriety test training for eight years, and that he had made hundreds of OWI arrests.

¶4 Wojcik explained that on January 19, 2020, while on duty in Eau Claire County, he was "dispatched to a driving complaint that originated around milepost 4 of a gray Dodge Ram pickup that was speeding and weaving through traffic." Dispatch told Wojcik that the vehicle had Minnesota license plates and provided him with the plate number.

¶5      Wojcik testified that he subsequently observed a vehicle that "matched the description of the driving complaint" at "around milepost 70, 71."[2] Wojcik's radar showed that the vehicle was traveling at eighty miles per hour in a seventy-mile-per-hour zone. Wojcik therefore activated his squad car's emergency lights to initiate a traffic stop. According to Wojcik, it took "a half mile to three-quarters of a mile" for the vehicle to pull over. As the vehicle was pulling over, Wojcik noticed that it had a cracked windshield.

¶6      Wojcik approached the vehicle, and the driver identified himself as Johnson. Wojcik noticed that Johnson's eyes were "red and glossy" and that his speech "appeared to be [kind of] thick and a little bit slower." Wojcik testified that he has been trained to "look at individuals' eyes" and "listen to their speech patterns" for possible indicators of intoxication. Wojcik also noticed that Johnson had a freshly lit cigarette. Based on his training, Wojcik testified that a freshly lit cigarette "is an indication of possible cover odor. Individuals who are impaired have a tendency to attempt to either [use] a cigarette or a masking cover odor of perfume to mask the odor of intoxicants in the vehicle." Wojcik also testified, based on his training, that "driving behavior" may be indicative of intoxication,

---

[2] Specifically, Wojcik testified that he observed "a gray Dodge Ram." He testified that when he first saw the vehicle, he could not see its license plate. After Wojcik stopped the vehicle, however, he necessarily would have become aware of its license plate number. The citations that Wojcik issued to Johnson show that the vehicle's license plate number matched the plate number provided by dispatch.

We also observe that, during his testimony, Wojcik stated that the driving complaint "originated around milepost 4," but he did not specify the highway where the complaint originated. Later, Wojcik testified that he observed a vehicle matching the description provided by dispatch "around milepost 70, 71." Again, Wojcik did not specify the highway where he observed the vehicle. The clear implication of Wojcik's testimony, however, was that he observed the vehicle on the same highway where the driving complaint was previously reported. The citations that Wojcik issued to Johnson show that the stop occurred on Interstate Highway 94.

"as far as [a vehicle] weaving … within its lane, outside of its lane of traffic, as well as speed, either above or below the posted speed limit."

¶7    Following his initial contact with Johnson, Wojcik decided that he would begin his paperwork for a speeding citation and a warning for Johnson's cracked windshield, and he would then direct Johnson to exit his vehicle "to see if there was any indication or odor of intoxicants coming from [Johnson's] person away from the odor of the cigarette." While Wojcik was preparing the paperwork, another officer arrived on the scene. Wojcik asked the second officer to approach Johnson's vehicle to get Johnson's insurance information and "to see if he … could smell an odor of intoxicants." After speaking with Johnson, the second officer told Wojcik that he could smell the cigarette but could not smell any alcohol.

¶8    Wojcik subsequently asked Johnson to exit his vehicle so that Wojcik "could ascertain if there was an odor of intoxicants coming from [Johnson's] person and … start field sobriety testing." Wojcik explained that based on Johnson's "eyes" and "speech patterns," he "wanted to remove [Johnson] from the possible cover odor of the cigarette smoke … to see if there was an odor of intoxicants."

¶9    Portions of Wojcik's dashboard camera video of the stop were played during the suppression hearing. On cross-examination, Wojcik conceded that he did not know the identities of any individuals who had called in driving complaints about Johnson's vehicle prior to the stop. Wojcik also acknowledged that although he observed Johnson's vehicle speeding, he did not see Johnson's vehicle swerving, going over the centerline or the fog line, driving too close to other vehicles, or engaging in unnecessary braking. Wojcik did not notice any

issues with Johnson's coordination when Johnson took out his driver's license. In addition, Wojcik did not ask Johnson whether he had been drinking or had consumed other intoxicants or medications.

¶10    Following briefing by the parties, the circuit court denied Johnson's suppression motion in an oral ruling. The court found that dispatch "received a phone call indicating some trouble, some driving behavior, specifically speeding and weaving," and thereafter, "[i]t took quite a while before police actually did pull over the vehicle that matched the description." The court further found that when Wojcik pulled the vehicle over and spoke with Johnson, Wojcik "noted the smell of the freshly lit cigarette and described observing red, glossy eyes and thick, slow, not slurred, but almost slurred speech."

¶11    The circuit court noted that Wojcik did not ask Johnson how many drinks he had consumed, which the court characterized as "unusual." The court also stated that this case differed from typical OWI cases because Wojcik "did not personally observe the driving" and because, due to the freshly lit cigarette, Wojcik "was not able to observe whether there was an odor of intoxicants."

¶12    Nevertheless, the circuit court stated that Wojcik "did have the information from the tip about the driving behavior" and "did observe speeding, did observe that the individual failed to immediately pull over." The court also credited Wojcik's testimony "that based on his training and experience he has known [the odor of a freshly lit cigarette] to be a cover odor, something that people can do to mask the scent of intoxicants." While acknowledging that it was a "somewhat close" case, under the totality of the circumstances, the court determined that Wojcik had sufficient reasonable suspicion to "pull Mr. Johnson

out of the vehicle to check and see if he could smell the intoxicant outside the cover odor of the cigarette and then perform field sobriety testing."

¶13    After the circuit court denied his suppression motion, Johnson entered a no-contest plea to the OWI charge.  Pursuant to a plea agreement, the PAC charge was dismissed, and the possession of THC charge was dismissed and read in.  Johnson now appeals.

## DISCUSSION

¶14    When reviewing a circuit court's decision on a motion to suppress evidence, we will uphold the court's factual findings unless they are clearly erroneous.  *State v. Anderson*, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285.  "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."  *Id.*  The application of constitutional principles to the facts, however, is a question of law that we review independently. *Id.*

¶15    "The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect individuals against unreasonable searches and seizures."  *State v. Adell*, 2021 WI App 72, ¶15, 399 Wis. 2d 399, 966 N.W.2d 115.  A traffic stop constitutes a seizure for purposes of the Fourth Amendment and "is reasonable at its inception if it is supported by reasonable suspicion that a traffic violation has been or will be committed." *Id.*

¶16    Reasonable suspicion exists when there are "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1,

733 N.W.2d 634 (citation omitted). "The question of what constitutes reasonableness is a common sense test. What would a reasonable police officer reasonably suspect in light of his or her training and experience." *Adell*, 399 Wis. 2d 399, ¶17 (citation omitted). Reasonable suspicion is "a fairly low standard to meet" and is determined based on the totality of the circumstances. *Anderson*, 389 Wis. 2d 106, ¶33. Nevertheless, an inchoate and unparticularized suspicion, or "hunch," is not enough. *Post*, 301 Wis. 2d 1, ¶10.

¶17 Here, it is undisputed that Wojcik had reasonable suspicion to stop Johnson's vehicle for a traffic violation—namely, speeding. Johnson argues, however, that Wojcik lacked reasonable suspicion to expand the scope of the stop by directing him to exit his vehicle to perform field sobriety tests.

¶18 "After a justifiable stop is made, the officer may expand the scope of the inquiry only to investigate 'additional suspicious factors [that] come to the officer's attention.'" *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124 (alteration in original; citation omitted). "An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." *Id.* In this case, the State does not dispute that the removal of Johnson from his vehicle to perform field sobriety tests extended the duration of the traffic stop beyond the time necessary for the original stop. Thus, "the legality of the extension of the traffic stop … turns on the presence of factors which, in the aggregate, amount to reasonable suspicion that [Johnson] committed a crime the investigation of which would be furthered by [Johnson's] performance of field sobriety tests." *See id.*, ¶37.

¶19 Like the circuit court, we acknowledge that this is a close case. Also like the circuit court, we ultimately conclude that the totality of the circumstances gave rise to reasonable suspicion that Johnson had operated his vehicle while intoxicated, such that Wojcik could permissibly extend the traffic stop by removing Johnson from his vehicle to perform field sobriety tests.

¶20 We consider several factors in reaching this conclusion.[3] First, we note that when Wojcik made contact with Johnson, he observed that Johnson's

---

[3] Johnson argues that in our reasonable suspicion analysis, we may not consider the initial complaint about his driving because it was an anonymous tip that lacked "significant, specific details and future predictions that police [were] able to corroborate." *See State v. Miller*, 2012 WI 61, ¶37, 341 Wis. 2d 307, 815 N.W.2d 349. In its response brief, the State argues that we may consider the initial driving complaint, but the State does not squarely address Johnson's argument that the complaint was an anonymous tip that lacked sufficient corroboration. Unrefuted arguments may be deemed conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Ultimately, however, we need not resolve the issue of whether we may consider the initial driving complaint because even without that complaint, we conclude that Wojcik had reasonable suspicion that Johnson was operating while intoxicated. *See Mudrovich v. Soto*, 2000 WI App 174, ¶16 n.5, 238 Wis. 2d 162, 617 N.W.2d 242 ("[O]nly dispositive issues need be addressed.").

In addition, we note that the circuit court made a factual finding that Johnson "failed to immediately pull over," and the court considered that fact in its reasonable suspicion analysis. After reviewing the dashboard camera video, we agree with Johnson that the court's finding on this point is clearly erroneous. *See State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898 ("[W]hen evidence in the record consists of disputed testimony and a video recording, we will apply the clearly erroneous standard of review when we are reviewing the [circuit] court's findings of fact based on that recording.").

Wojcik testified that after he activated his squad car's emergency lights, it took "a half mile to three-quarters of a mile" for Johnson to pull over. The video shows, however, that Johnson activated his vehicle's turn signal—indicating his intent to pull over—approximately seven seconds after Wojcik turned on his squad car's siren. At that point, there was a guardrail on the right side of the highway next to Johnson's vehicle. With his turn signal still activated, Johnson proceeded past the guardrail and then immediately pulled over onto the highway's right shoulder. In all, approximately twenty seconds elapsed between the time Wojcik activated his vehicle's siren and the time Johnson pulled over. Under these circumstances, the circuit court's finding that Johnson "failed to immediately pull over" is clearly erroneous. As a result, we do not consider that finding in our reasonable suspicion analysis.

eyes were "red and glossy."[4] Wojcik also noted that Johnson's speech "appeared to be [kind of] thick and a little bit slower."[5] Wojcik testified that he has been trained to "look at individuals' eyes" and "listen to their speech patterns" when assessing whether an individual is intoxicated. Our case law confirms that red and glossy eyes and slow speech are factors that contribute to reasonable suspicion of intoxication. *See, e.g.*, *State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 (stating that "a law enforcement officer may consider bloodshot and glassy eyes to be one of several indicators of intoxication"); *State v. Kosmosky*, No. 2022AP1754, unpublished slip op. ¶9 (WI App Mar. 29, 2023), *review denied*, 2024 WI 1 (considering slow speech and "bloodshot, glassy eyes" as factors contributing to reasonable suspicion of intoxication);[6] *State v. Kothbauer*, No. 2020AP1406-CR, unpublished slip op. ¶24 (WI App May 3, 2022), *review*

---

[4] Johnson attempts to undermine Wojcik's testimony that his eyes were red and glossy by emphasizing that he was wearing sunglasses during their encounter. However, during his testimony, Wojcik described the sunglasses as the type that change color depending on the surrounding light, such that they were darker after Johnson exited his vehicle but were merely "tinted" when Johnson was inside his vehicle. Wojcik specifically testified that he was able to see through the lenses of Johnson's sunglasses while Johnson was in the vehicle and could observe Johnson's eyes. The circuit court obviously credited Wojcik's testimony on that point, as it made a factual finding that Wojcik observed Johnson's "red, glossy eyes." Based on the evidence introduced at the suppression hearing, the court's finding in that regard is not clearly erroneous.

[5] In his reply brief, Johnson argues for the first time that the dashboard camera video "belies" Wojcik's testimony that his speech was thick and slow. He asserts that this court should "review the … footage capturing Johnson's speech and make its own factual findings." We need not address arguments raised for the first time in a reply brief. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Regardless, based on our review of the video, we conclude that the circuit court's factual finding that Johnson's speech was thick and slow is not clearly erroneous. *See Walli*, 334 Wis. 2d 402, ¶17.

[6] An unpublished opinion authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

*denied*, 2022 WI 105 (considering "slowed speech and glassy eyes" as factors contributing to reasonable suspicion of intoxication).

¶21    In addition, although Wojcik could not smell any alcohol when speaking with Johnson, he noticed that Johnson had a freshly lit cigarette. Based on his training, Wojcik testified that a freshly lit cigarette "is an indication of possible cover odor" and that impaired individuals sometimes use the smell of cigarette smoke "to mask the odor of intoxicants in the vehicle." This court has previously considered a defendant's "seemingly freshly lit cigarette" as contributing to reasonable suspicion that the defendant was operating while intoxicated, based on an officer's testimony that it is "not uncommon for someone to try to cover the odor of intoxicants with [a] cigarette[]." *See State v. Kolman*, No. 2011AP1917-CR, unpublished slip op. ¶¶4, 29 (WI App Jan. 12, 2012) (alterations in original); *see also Kosmosky*, No. 2022AP1754, ¶¶2, 12.

¶22    Furthermore, Wojcik testified that his radar showed that Johnson's vehicle was traveling at eighty miles per hour in a seventy-mile-per-hour zone. We have previously held that speeding can contribute to reasonable suspicion that a driver is operating while intoxicated or with a prohibited alcohol concentration. *See Adell*, 399 Wis. 2d 399, ¶25 (stating that although "speeding alone may count more weakly than other factors," a deputy "could reasonably have considered the [defendant's] excessive speeding as a variety of risky driving that may reflect operating with a prohibited alcohol concentration"); *see also Town of Freedom v. Fellinger*, No. 2013AP614, unpublished slip op. ¶24 (WI App Aug. 6, 2013) (explaining that speeding was a factor contributing to reasonable suspicion of operating while intoxicated because it "showed [the defendant's] nonconformance with the law"). In addition, when asked what factors he has been "taught to look

for" as indicators of impairment, Wojcik specifically mentioned "speed, either above or below the posted speed limit."[7]

¶23    In summary, at the time that Wojcik asked Johnson to exit his vehicle, Wojcik was aware of Johnson's red and glossy eyes, Johnson's slow speech, Johnson's freshly lit cigarette, and Johnson's speeding. Wojcik testified that he has been trained to look for these factors as indicators of intoxication. Although this is a close case, we conclude that these "specific and articulable" facts would have led a "reasonable police officer" in Wojcik's position to suspect, based on his or her training and experience, that Johnson had operated his vehicle while intoxicated. *See Post*, 301 Wis. 2d 1, ¶¶10, 13.

¶24    In support of his claim that Wojcik lacked reasonable suspicion to expand the scope of the traffic stop, Johnson cites multiple factors that Wojcik *did not* observe before and during the stop. For instance, he notes that Wojcik did not observe Johnson's vehicle swerving, crossing any lane lines, driving too close to other vehicles, drastically varying its speed, or braking unnecessarily. Johnson also emphasizes that Wojcik did not observe any soiled clothing, open containers, or drug paraphernalia in Johnson's vehicle, that Wojcik did not smell alcohol, and that Wojcik did not notice any issues with Johnson's fine motor skills. Johnson

---

[7] Johnson argues that in *State v. Betow*, 226 Wis. 2d 90, 593 N.W.2d 499 (Ct. App. 1999), this court "did not find exceeding the speed limit was relevant evidence of intoxication." In *Betow*, the defendant was stopped for speeding, and the officer subsequently extended the stop to investigate whether the defendant had controlled substances in his possession. *Id.* at 91-93. The sole issue on appeal was whether the officer had the necessary reasonable suspicion to extend the stop. *Id.* at 91-92. After examining the totality of the circumstances, but without specifically considering the defendant's speeding, we concluded that the officer lacked reasonable suspicion to extend the stop. *Id.* at 94-97. Our failure to consider the defendant's speeding as a factor contributing to reasonable suspicion of drug possession in *Betow* does not compel a conclusion that an individual's speeding cannot contribute to reasonable suspicion of OWI.

argues that the absence of these factors demonstrates that Wojcik lacked reasonable suspicion that Johnson was operating while intoxicated.

¶25 We reiterate, however, that our determination of reasonable suspicion is based on the totality of the circumstances. *See Anderson*, 389 Wis. 2d 106, ¶33. As such, "the absence of one or more factors will not necessarily lead to a conclusion that a stop was unconstitutional." *Village of Hales Corners v. Adams*, No. 2013AP1128, unpublished slip op. ¶20 n.7 (WI App Jan. 14, 2014). Furthermore, we again emphasize that reasonable suspicion is "a fairly low standard to meet." *See Anderson*, 389 Wis. 2d 106, ¶33. Here, the factors that Wojcik *did* observe were sufficient to give rise to reasonable suspicion that Johnson had operated his vehicle while intoxicated, even though Wojcik did not observe the additional factors that Johnson raises. As such, the circuit court properly denied Johnson's suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.