COURT OF APPEALS
DECISION
DATED AND FILED

April 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP1263-CR**

Cir. Ct. No.  **2019CF391**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

TERRANCE L. MELOY, JR.,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Waupaca County: VICKI L. CLUSSMAN, Judge. *Remanded with directions*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Terrance Meloy, Jr., appeals a judgment of conviction for operating a motor vehicle while under the influence of an intoxicant

as a fifth or sixth offense. Meloy argues that the circuit court erred in denying his motion to suppress evidence obtained by a police officer following the officer's warrantless entry into his garage. The State argues that the warrantless entry was justified by multiple categories of exigent circumstances, including hot pursuit, threat to the officer's safety, and a likelihood that Meloy would flee. The State also argues that, even if the officer unlawfully entered Meloy's garage, the evidence would have been inevitably discovered by lawful means. We conclude that the State has not shown that the facts of this case satisfy any of these justifications for admitting the evidence obtained without a warrant. Accordingly, we remand to the circuit court with directions to grant Meloy's motion to suppress evidence.[1]

## BACKGROUND

¶2 The officer who entered Meloy's garage without a warrant was initially dispatched to assist in the investigation of a hit-and-run accident. He had been informed that the suspect vehicle was a red car, but he did not know if the driver was injured, nor did he know other details about the accident. He ran the license plate number for the vehicle provided by an eyewitness and obtained an address.

¶3 The officer proceeded to the address and knocked on the front door of the residence, but received no response. He next approached the detached garage. The garage overhead door was closed, but the officer could see a light on inside through a window on the side of the garage. He could also see a red car inside.

---

[1] The relief we grant in this opinion is consistent with Meloy's request in his appellant's brief that we "reverse the circuit court's decision denying his motion to suppress, and remand with instructions to suppress all evidence obtained after the unlawful entry."

¶4      Next, the officer proceeded to the front of the garage and announced himself as a member of the sheriff's office.  He received no response and returned to the side of the garage.  The officer noticed that the light he had seen in the garage earlier had been turned off.  He knocked on the garage service door that was next to the window, and the knocking apparently caused the door to swing open.[2]

¶5      With the service door to the garage open, the officer could see an individual, Meloy, standing next to the car.  The officer ordered Meloy to show his hands, and Meloy complied.

¶6      The officer stepped into the garage and escorted Meloy outside.  Once Meloy was outside, the officer could smell alcohol on his breath.  The officer began asking Meloy questions, and Meloy admitted to having had too much to drink.  The officer administered field sobriety tests and attempted to administer a preliminary breath test.  After that, the officer placed Meloy under arrest and transported him to the hospital for a blood draw.

¶7      The State charged Meloy with operating a motor vehicle while under the influence of an intoxicant.  Meloy filed a motion to suppress evidence.  He argued that the officer unlawfully searched the curtilage of his home and unlawfully entered his garage without a warrant.  The State argued that the officer's actions were lawful based on multiple exceptions to the warrant requirement, including hot pursuit, exigent circumstances, and the officer's community caretaker function.[3]

---

[2] The officer testified that when he knocked on the door, the door "flung open."

[3] As discussed further below, hot pursuit is one category of exigent circumstances, not a separate exception to the warrant requirement.

¶8      The circuit court concluded that Meloy's detached garage was part of the curtilage of Meloy's home and that Meloy had a reasonable expectation of privacy in his garage. The court noted that the State had not argued otherwise. The court also rejected the State's argument that exceptions to the warrant requirement apply on these facts.

¶9      However, the circuit court nonetheless denied Meloy's suppression motion. The court concluded that the evidence obtained from the officer's unlawful entry into Meloy's garage is admissible under the inevitable discovery doctrine, an exception to the exclusionary rule. The court reasoned that the evidence would have been inevitably discovered, either because Meloy would have voluntarily exited the garage or because the officer would have obtained a warrant based on probable cause.

## DISCUSSION

¶10     This court reviews the grant or denial of a suppression motion under a two-part standard of review. *State v. Adell*, 2021 WI App 72, ¶14, 399 Wis. 2d 399, 966 N.W.2d 115. We uphold the circuit court's factual findings unless the findings are clearly erroneous. *Id.* However, we review de novo the legal question of whether the facts satisfy constitutional standards. *Id.*

¶11     Here, the circuit court concluded that there was no serious dispute as to the facts. We agree, and based on the parties' briefing, it appears that they also agree that the facts are not in dispute. Accordingly, we are presented only with legal issues for de novo review.

¶12     "The Fourth Amendment guarantees that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures, shall not be violated.'" *State v. Wilson*, 2022 WI 77, ¶19, 404 Wis. 2d 623, 982 N.W.2d 67 (alteration in original; quoted source omitted). "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* (quoted source and internal quotation marks omitted). "At the Amendment's 'very core' stands 'the right of a [person] to retreat into [the person's] own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoted source omitted).

¶13    These Fourth Amendment protections also extend to the "curtilage" of one's home. *Wilson*, 404 Wis. 2d 623, ¶20. Curtilage is "the area 'immediately surrounding and associated with the home.'" *Id.* (quoted source omitted).

¶14    Here, as noted, the circuit court concluded that Meloy's detached garage was curtilage, and the State did not argue otherwise. The State now expressly concedes this point. However, the parties dispute whether there were exigent circumstances to justify the officer's warrantless entry into Meloy's garage. Additionally, the State argues that the court correctly concluded that the inevitable discovery doctrine applies. For the reasons that follow, we conclude that the State has not shown that the facts of this case satisfy any of the justifications argued by the State for admitting the evidence obtained from the warrantless entry into Meloy's garage.[4]

*A. Exigent Circumstances*

¶15    "Warrantless searches of homes are presumptively unreasonable." *State v. Ware*, 2021 WI App 83, ¶19, 400 Wis. 2d 118, 968 N.W.2d 752 (internal

---

[4] The State now concedes that there is no evidence that the officer was acting in a community caretaker capacity when he entered the garage. Accordingly, we do not address the community caretaker exception to the warrant requirement.

quotation marks and quoted source omitted). However, "a warrantless home entry is generally lawful if there are exigent circumstances together with probable cause." *Wilson*, 404 Wis. 2d 623, ¶22.

¶16 "Our analysis of whether the officer[] acted reasonably in entering the house without a warrant is measured against the 'totality of the circumstances.'" *State v. Mielke*, 2002 WI App 251, ¶7, 257 Wis. 2d 876, 653 N.W.2d 316. "The test is objective: what a reasonable police officer would reasonably believe under the circumstances." *Id.*

¶17 Here, the parties focus primarily not on whether there was probable cause but instead on whether the facts show exigent circumstances. "The State bears the burden of proving the existence of exigent circumstances." *State v. Richter*, 2000 WI 58, ¶29, 235 Wis. 2d 524, 612 N.W.2d 29.

¶18 There are four "well-recognized" categories of exigent circumstances. *Id.* The categories are hot pursuit of a suspect, a threat to the safety of a suspect or others, a risk that evidence will be destroyed, and a likelihood that the suspect will flee. *Id.*

¶19 Here, the State's primary exigent circumstance argument is based on hot pursuit. Additionally, the State argues that there was a threat to the officer's safety and a likelihood that Meloy would flee. We address each in turn.

*1. Hot Pursuit*

¶20 Hot pursuit requires an "immediate or continuous pursuit of [a suspect] from the scene of a crime." *Id.*, ¶32 (alteration in original; internal quotation marks and quoted source omitted). The State argues that the facts here are like those in *Richter*, a case in which our supreme court concluded that an officer

was engaged in hot pursuit. Meloy argues that the facts here are more similar to those in *Wilson*, a case in which our supreme court concluded that an officer was *not* engaged in hot pursuit.

¶21     We disagree with the State that the facts here are like those in *Richter*. We also conclude that our supreme court's decision in *Wilson* supports a conclusion that the officer here was not engaged in hot pursuit.

¶22     In *Richter*, the officer responded to a report of a burglary in progress at a trailer park. *Richter*, 235 Wis. 2d 524, ¶3. Upon the officer's arrival at the trailer park, he was immediately flagged down by a witness who said that a man had just broken into her residence and had then run to a trailer directly across the street. *Id.* The officer proceeded to the trailer and noticed that the trailer's front picture window was open, with a screen on the ground. *Id.*, ¶4. The officer took this as a sign of forced entry under the circumstances. *Id.* He looked through the window and saw multiple occupants sleeping inside. *Id.*, ¶5. He was able to wake two of the occupants, who said that they did not own the trailer. *Id.*, ¶6. The officer then entered the trailer without a warrant. *Id.*, ¶¶1, 7.

¶23     Our supreme court in *Richter* concluded that the officer was engaged in hot pursuit when he entered the trailer. *Id.*, ¶36.[5] The court first explained that an officer may be in hot pursuit of a crime suspect even if the officer did not personally observe the crime or the fleeing suspect. *Id.*, ¶33. The court further explained that the officer there was engaged in hot pursuit because the officer's "response to the scene of the crime was immediate," and because the officer's

---

[5] Our supreme court in *State v. Richter*, 2000 WI 58, 235 Wis. 2d 524, 612 N.W.2d 29, also concluded that the officer reasonably believed that there was a threat to the safety of the trailer's occupants. *Id.*, ¶41.

"pursuit of the suspect was immediate and continuous upon his arrival on the scene and [his] rapid collection of information regarding the whereabouts of the suspect." *Id.*, ¶36. The court noted that there was no evidence "of any delay in [the officer]'s response or pursuit that would have interrupted the immediacy and continuity of the situation and therefore dissipated the exigency." *Id.*

¶24 In *Wilson*, a caller reported that a vehicle was being driven erratically before it stopped at an address where the driver got out of the vehicle, climbed onto a fence, reached over the fence to open it, and entered a fenced yard. *Wilson*, 404 Wis. 2d 623, ¶5. An officer responded to the address and observed a vehicle matching a description provided by the caller. *Id.*, ¶6. The officer ran the vehicle's license plate and learned that it was not registered at that address. *Id.* The officer next contacted the caller to confirm information the caller had provided. *Id.*, ¶7. After speaking with the caller, the officer entered the fenced yard without a warrant. *Id.*, ¶9.

¶25 The *Wilson* court concluded that the officer was not engaged in hot pursuit. *Id.*, ¶¶47-48. The court first explained that, although hot pursuit does not necessarily require an "extended hue and cry in and about (the) public streets," it does require "[s]ome sort of a chase." *Id.*, ¶38 (internal quotation marks and quoted source omitted). The court concluded that "such an event did not occur here," and that "there was no 'pursuit,' much less a 'hot' pursuit." *Id.*, ¶47; *see also id.*, ¶42 ("What occurred was neither hot nor was it a continuous pursuit.").

¶26 Our supreme court in *Wilson* distinguished *Richter*, reasoning that, unlike in *Richter*, the officer in *Wilson* did not "pick up [the suspect]'s trail and immediately pursue [the suspect] based on the contemporaneous collection of information." *Id.*, ¶42. Rather, the officer in *Wilson* had "received a call to go to a

particular location" and, upon arrival, the officer "delayed in order to gather more information" by running the vehicle's license plate and contacting the caller to obtain additional details relating to the caller's report. *Id.* The court in *Wilson* reasoned that "the attenuation reflected by these activities does not support a hot pursuit conclusion." *Id.*, ¶46.

¶27    Here, as in *Wilson*, there was no event that could reasonably be viewed as "[s]ome sort of chase." *See id.*, ¶38. The officer did not "pick up [Meloy]'s trail" or "immediately pursue [Meloy] based on the collection of contemporaneous information." *See id.*, ¶42. Rather, as in *Wilson*, the officer had obtained an address where a suspect was believed to be located, and the officer went to the address to investigate.

¶28    The State argues that Meloy's case is similar to *Richter*, and that Meloy's case is not like *Wilson* because, "[u]nlike in *Wilson*, here[] there is no attenuation." We are not persuaded. Although it is difficult to compare the exact amount of attenuation or delay in each of these cases,[6] we agree with Meloy that his case is more similar to *Wilson* than *Richter*. Further, the State's attenuation argument omits or downplays several investigatory steps that the officer took here after being dispatched to Meloy's residence and before making the warrantless entry into Meloy's garage. As in *Wilson*, the officer ran the suspect vehicle's plate. Additionally, here when the officer received no response by knocking on Meloy's front door, he did not simply "[go] to the garage." Rather, he first went to the side of the garage and looked through the garage window. Next, he went around to the front of the garage to announce his presence. Then, after receiving no response, he

---

[6] In *State v. Wilson*, 2022 WI 77, 404 Wis. 2d 623, 982 N.W.2d 67, our supreme court acknowledged that the court did know the "exact amount of time" that it took the officer to conduct an investigation at the scene. *Id.*, ¶42.

returned to the side of the garage and knocked on the service door, causing the door to open. Only after that did the officer enter Meloy's garage.

¶29 It is true that the officer in *Richter* also took steps to investigate after he arrived at the scene and before making the warrantless entry. Specifically, he went to the trailer to which the suspect had fled, observed the open window and missing screen, observed occupants inside, and woke some of the occupants and briefly communicated with them. *See Richter*, 235 Wis. 2d 524, ¶¶4-6. However, the officer in *Richter* took those steps in response to a report by a witness at the scene that a suspected burglar had just fled from her residence into the trailer across the street, where it appeared that a second burglary might be in progress. Here there was no similar pursuit of a fleeing suspect or any apparent crime actively in progress when the officer arrived on the scene and made the warrantless entry.

## 2. *Threat to Officer Safety*

¶30 The State also argues that the officer had a reasonable belief that Meloy was a threat to the officer's safety, as reflected by the fact that the officer instructed Meloy to show his hands before the officer entered the garage. The State also argues that there was evidence that the officer had his hand on his firearm at the time and that this fact further reflects the officer's perception of a threat.

¶31 However, we agree with Meloy that these circumstances, without more, are not sufficient to support a reasonable belief that Meloy was a threat to the officer's safety justifying warrantless entry to the garage. Moreover, as Meloy points out, the State omits a fact tending to show that Meloy was not a threat,

namely, that Meloy unequivocally complied with the officer's command to show the officer his hands.[7]

### 3. Likelihood that Meloy Would Flee

¶32     The State further argues that the officer could have reasonably believed that Meloy would flee from the officer based on the officer's knowledge that Meloy had likely just fled from the scene of a hit-and-run accident.  However, we agree with Meloy that, without more, the circumstances here are insufficient to show a likelihood that Meloy would flee from the officer once he was at his own residence.  Beyond that, the State does not persuade us that there is a basis in the facts to conclude that the officer's warrantless entry to the garage could be justified based on a concern about flight.

¶33     In arguing to the contrary, the State relies on *State v. Robinson*, 2010 WI 80, 327 Wis. 2d 302, 786 N.W.2d 463.  But *Robinson* involved a warrantless entry into a suspected drug dealer's home based on the risk of the destruction of evidence of drug dealing.  *See id.*, ¶¶1-4, 7-8, 27-29, 31.  Our supreme court in *Robinson* did not, as the State appears to argue, conclude that there was a risk that the suspect would flee.[8]  We conclude that the State's reliance on *Robinson* is misplaced.

---

[7] The officer testified that when he instructed Meloy to show his hands, Meloy "absolutely" complied.

[8] The State characterizes the court's decision in *State v. Robinson*, 2010 WI 80, 327 Wis. 2d 302, 786 N.W.2d 463, as "holding that defendant's choice to run from the door upon police knocking and announcing themselves created exigent circumstances indicating he meant to flee and justifying a warrantless entry into his home."

## B. *Inevitable Discovery*

¶34    We turn to the State's reliance on inevitable discovery. "Under the inevitable discovery doctrine, 'evidence obtained during a search which is tainted by some illegal act may be admissible if the tainted evidence would have been inevitably discovered by lawful means.'" *State v. Jackson*, 2016 WI 56, ¶47, 369 Wis. 2d 673, 882 N.W.2d 422 (quoted source omitted). "[T]he State has the burden of proof in satisfying this narrow exception to the exclusionary rule." *Id.*, ¶72.

¶35    Here, as noted above, the circuit court concluded that the inevitable discovery doctrine applied either because Meloy would have voluntarily exited his garage or because the officer would have obtained a warrant based on probable cause. Meloy argues that the record lacks evidence to support this conclusion. We conclude that the State has not satisfied its burden to show inevitable discovery.

¶36    In addressing the inevitable discovery doctrine, our supreme court in *Jackson* emphasized the State's burden, the narrowness of the doctrine, and the need for "demonstrated historical facts" rather than "conjecture." *Id.*, ¶72. The court in *Jackson* said:

> [W]e emphasize that the State has the burden of proof in satisfying this narrow exception to the exclusionary rule. As the Seventh Circuit observed,
>
> > *Nix* [*v. Williams*, 467 U.S. 431 (1984)] ... speaks in terms of *proof* by preponderance of the *evidence* that the government would have discovered the challenged evidence through lawful means.... Inevitable discovery is not an exception to be invoked casually, and if it is to be prevented from swallowing the Fourth Amendment and the exclusionary rule, courts must take care to hold the government to its burden of proof.

*United States v. Jones*, 72 F.3d 1324, 1334 (7th Cir. 1995).
Proof of inevitable discovery turns upon demonstrated historical facts, not conjecture.

*Id.*; *see also id.*, ¶54 ("[P]roving that discovery of evidence was truly *inevitable* 'involves no speculative elements but focuses on *demonstrated historical facts* capable of ready verification or impeachment.'" (quoting *Nix*, 467 U.S. at 445 n.5; emphasis in *Jackson*)).

¶37    Here, according to the State, the evidence obtained after the officer entered Meloy's garage would have been inevitably discovered because, as the circuit court concluded, either Meloy would have voluntarily exited the garage or the officer would have obtained a warrant based on probable case.  However, the State concedes that "there is no proof of which would have occurred."  The State nonetheless asserts that "one of them would have."  The State similarly asserts, without explanation or citation to any record evidence, that if the officer had not entered the garage and Meloy had refused to exit the garage, then the officer "would have pursued a warrant and been able to question Meloy."

¶38    Assuming without deciding that the officer had probable cause before he entered Meloy's garage, we conclude that the State has not met its burden to show inevitable discovery.  The State's argument that discovery was inevitable is based on conjecture, not demonstrated historical facts.  We simply do not know whether Meloy might have soon exited the garage of his own accord with the officer still present, whether Meloy might have instead remained in the garage for a significant period of time, whether or when the officer might have obtained a warrant, or whether something else might have occurred.  Among other shortcomings in the State's argument, the State points to no evidence that the officer could have obtained a warrant in time to discover the evidence of Meloy's

13

intoxication. Given that the State has the burden of proof, we decline to make assumptions regarding whether or when the officer would have obtained a warrant.[9]

## CONCLUSION

¶39 For all of the reasons stated above, we remand to the circuit court with directions to grant Meloy's motion to suppress evidence.

*By the Court.*—Remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).

---

[9] The officer responded to Meloy's residence after 11:30 p.m. As Meloy pointed out when he moved the circuit court to reconsider the court's reliance on the inevitable discovery doctrine, the State did not develop a record to establish how quickly or easily the officer might have been able to obtain a warrant to enter the garage if he had decided to seek one. Meloy argued:

> The State did not elicit any testimony regarding how long it takes to apply for a warrant, whether or not [the officer] had applied for a warrant in the past in similar circumstances, what judge would have been available to sign the warrant, whether the warrant would have been executed that night, or how a warrant to search the garage would have resulted in [the officer] discovering evidence of Mr. Meloy's intoxication.

The absence of evidence on these and other points relating to inevitable discovery is not surprising considering that the State did not advance the inevitable discovery doctrine in the circuit court.

14